

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARLOTTE WAKEFIELD, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-312-Y |
| | § | |
| CAROLYN COLVIN, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Charlotte Wakefield ("Wakefield") filed this action pursuant to Sections 405(g)

and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

XVI of the Social Security Act ("SSA"). In October 2010, Wakefield applied for social security

benefits, alleging that her disability began on October 16, 2005. (Transcript ("Tr.") 16, 147–59.)

Her applications were denied initially and on reconsideration, and Wakefield requested a hearing

before an administrative law judge ("ALJ"). (Tr. 16; see Tr. 12, 58-65, 70-75.) The ALJ held a

hearing on March 14, 2012 and issued a decision on April 23, 2012 that Wakefield was not disabled. (Tr. 16–24, 28–53.) On March 27, 2013, the Appeals Council denied Wakefield's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1999).

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§

2

404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At Steps One through Four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings

support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In her brief, Wakefield presents the following issues:

A.   Whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence; and

B.   Whether the ALJ's finding at Step Four is supported by substantial evidence.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 9–16.)

### IV.   ADMINISTRATIVE RECORD

In his April 23, 2012 decision, the ALJ stated that Wakefield met the disability insured status requirements of the SSA "through March 31, 2028." (Tr. 18.) At the first step of the five-step analysis, the ALJ found that Wakefield had not engaged in any substantial gainful activity since October 16, 2005, the alleged onset date for her disability. (*Id.*) At the second step, the ALJ held that Wakefield had the following severe impairments: "back disorder, status post cervical disc surgery, blindness in the right eye, and hepatitis C." (*Id.*)

At Step Three, the ALJ found that Wakefield did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 19.) As to Wakefield's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to maintain employment at the level of lifting and carrying 50 pounds occasionally and 25 pounds frequently. Sitting, standing, and walking would not be limited provided she has the opportunity to take normal breaks throughout the day; no climbing of ladders, ropes and scaffolds; no work at unprotected heights and dangerous moving machinery; no extended periods of continuous reading without regular breaks due to right eye

blindness; and limited depth perception in field of vision. Vision in the left eye is 20/30 to 20/50.

(Tr. 20 (emphasis omitted).) At Step Four, the ALJ concluded that, based on his RFC assessment and the testimony of a vocational expert ("VE"), Wakefield was capable of performing her past relevant work as a nurse. (Tr. 23.) Accordingly, the ALJ concluded that Wakefield was not disabled. (*Id.*)

## V. DISCUSSION

Wakefield argues that the ALJ's RFC and credibility determinations are not supported by substantial evidence and that the RFC finding does not reflect Wakefield's actual ability to work. (Pl.'s Br. at 10–14.) Specifically, Wakefield claims that the RFC fails to incorporate her allegations of left eye symptoms and limitations, neck pain, and reduced range of motion in her neck. (*Id.* at 12-14.) Wakefield claims that the ALJ's decision that she could perform her past relevant work as an RN is not supported by substantial evidence. (Pl.'s Br. at 14-16.)

As detailed below, the Court is recommending remand because of the ALJ's analysis regarding Wakefield's vision problems. Accordingly, the Court will not address the other issues raised by Wakefield. As to her vision problems, Wakefield contends that the ALJ did not account for periodic blurriness in her left eye. (Pl.'s Br. at 13.) Wakefield argues that the ALJ erred by focusing on the fact that she retained 20/30 or 20/50 vision in that eye. (*Id.*) Specifically, she states:

> Wakefield testified that her left eye becomes blurry several hours a day. She reported that it took several days to fill out her application for benefits on the computer and that she required the use of a magnifying glass to read and complete the forms. She also stated that she has been informed that surgery on her left eye would be risky as it could lead to blindness.

(Pl.'s Br. at 13 (internal citations omitted).)   Wakefield also pointed to the opinion of a consultative examiner, Nirmal Saran, M.D. ("Dr. Saran"), who performed diagnostic studies on her eyes.  As to Dr. Saran's opinions, Wakefield stated:

> The doctor diagnosed Wakefield with severe macular degeneration, dry type, left eye old chorioretinitis, hyperopic astigmatism, and presbyopia.   Dr. Saran concluded that Wakefield's prognosis was poor.   Another doctor noted that Wakefield had a central retinal scar in the left eye.   Wakefield contends that those objectively observed conditions could explain her left eye symptoms and that the ALJ's reliance only on her visual acuity when rejecting her left eye allegations was improper and unsupported.

(Pl.'s Br. at 13–14 (internal citations omitted).)

Wakefield also directs this Court's attention to testimony by the VE, Thomas Irons, who responded that it was "kind of iffy" whether an individual with a lack of depth perception could perform work as a registered nurse.  (Pl.'s Br. at 15, Tr. at 52–53.)  Wakefield argues that "the mere possibility that she might be able to perform her past work is not sufficient to support the ALJ's step four finding" and that "her need to use a magnifying glass to complete paperwork . . . and the considerable periods of time when even her 'good' eye is blurry would meet her burden to show that she cannot perform her past work."  (Pl.'s Br. at 15–16.)  Wakefield further objects to the ALJ's questioning of the VE, claiming his hypothetical failed to include Wakefield's eye limitations.  (Pl.'s Br. at 14, Tr. at 47–53.)

As stated above, the ALJ, *inter alia*, limited Wakefield to jobs that did not require the climbing of ladders, ropes, and scaffolds and working at unprotected heights and dangerous moving machinery and did not involve extended periods of continuous reading without regular breaks due to her "right eye blindness" and "limited depth perception in field of vision."  (Tr. 20.)  In addition, at Step Four, the ALJ found that Wakefield was capable of performing her past relevant work as a nurse.  (Tr. 23.)  In making such a determination, the ALJ relied on the

testimony of the VE at the hearing.  According to the transcript of the hearing, the following

disjointed and somewhat confusing exchange took place:

> [ALJ]: And I'd like you to assume an individual from my first hypothetical and all hypotheticals, there [sic] was 44 at alleged onset.  However, currently 50, three-year college degree.  She has an RN degree, a nurse.  I'm going to impose these limitations as set by the doctor.
>
> First hypothetical, lift and carry 50 occasionally, 25 frequently,  Sit, stand and walk would not be limited, provided she had the normal breaks throughout the day.  She should be precluded from climbing ladders, ropes or scaffolds and work at unprotected heights or dangerous moving machinery.
>
> In addition to that, she has right-eye blindness.  She should have no extended periods of continuous reading without, as he indicated, taking regular breaks throughout the day.  This is regarding the reading activities.  Her depth perception and field of vision would be limited and the left eye would vary from 20/30 to 20/50 vision, right-eye blindness.  Within the confines of that, my first hypothetical, I ask you could she perform any of her past relevant work, either as she performed it or as it would be performed pursuant to the dictates of the Dictionary of Occupational Titles.
>
> [VE]:  Let me make sure, Judge, on something, if I could?
>
> . . . .
>
> [ALJ]:  He said depth perception and field of vision would be limited, because she's got monocular vision.
>
> . . . .
>
> [VE:]  How about a combination?  You had mentioned that, I thought.
>
> [ALJ]: Well, what I have for this one, I just—I wrote down the extended periods of reading.
>
> [VE]: Read, okay.
>
> [ALJ]: She'd have to have normal breaks.  And the right-eye blindness.  This is my first hypothetical.
>
> [VE]: Okay.  Okay.  Within the—within that, there would not be a problem.
>
> [ALJ]: With past relevant work?

7

[VE]:   With past relevant work.

[ALJ]:   And that work is—would you give me the—it's called what?

[VE]:   It's a registered nurse, 075.364-010.

. . . .

[Administrative Counsel]: And you said that she could perform her past work as an RN.  You know, I have—I kind of have a hard time believing that, you know, somebody would be able to work as an RN with blindness in one eye and significantly, you know, impaired vision in another.  I mean, with an RN, oftentimes, you're giving shots and stuff like that.  You wouldn't have any depth perception whatsoever.

[VE]:   The judge did not include depth perception in that.

ALJ:   I said field of vision.  I said limited depth perception and field of vision.

VE:   Oh, limited depth perception of [sic] field of vision.

ALJ:   I had that in my hypothetical.

VE:   Okay.

[VE]:   Well, depth, that's why I did not.

ALJ:   Yeah.

[VE]:   Depth perception is not—is a no.

ALJ:   It's a what?

[Administrative Counsel]:   I don't—

[VE]:   It's a none for RN.

ALJ:   Oh, there is no [depth perception] required for that job?

VE:   No, No.

ALJ:   Okay.  That's what the DOT says.

VE:   No.

8

ALJ:  I don't know.  You kept the code.

[Administrative Counsel]:  Okay.  Well, let's—let's step away from the DOT and think about this as a practical matter.  If somebody were to apply for a job as an RN with no depth perception, okay, or very limited, blindness in one eye, are they going to be able to perform that job?

[VE]:  Let me say it this way.  Giving shots with lack of depth perception is – it's pretty individually based.  I've seen people do fine with the loss of depth perception because they use other visual cues, okay.

[Administrative Counsel]:  Were these people—did these people have normal vision in that other eye?

[VE]:  Let me finish my—let me finish my response.

[Administrative Counsel]:  Sure.

[VE]:  And others are not able to do so.  So it's kind of iffy.

[Administrative Counsel]:  I'll pass the witness.

(Tr. 47-49, 51–53.)

Once the ALJ has made the RFC determination, the ALJ moves on to Step 4 of the disability analysis.  When determining at Step Four whether the claimant could perform her past relevant work, the ALJ is permitted to consult a VE.  *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a [VE] to find that [the claimant] was able to return to her past relevant work . . . ."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.")  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995)*.*  At Step 4,

9

the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

In this case, even assuming without deciding that the ALJ's RFC determination was supported by substantial evidence, the VE's testimony does not provide sufficient support for the ALJ's Step Four finding that Wakefield could return to her past relevant work as a nurse. While the VE originally testified that an individual with a hypothetical RFC determination that matched the RFC determination ultimately found by the ALJ could return to her past relevant work as an RN, the VE, when cross-examined by Wakefield's Administrative Counsel, wavered on his original answer. The VE, in response to questioning, ultimately stated that it was "iffy" whether or not someone with monocular vision and depth perception problems such as Wakefield could perform some of the tasks required of an RN. (Tr. 51–53.) Based on this record, the Court concludes that substantial evidence does not support the ALJ's decision at Step Four and remand is required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only

10

make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 11, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 28, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE